Gaston, J.
 

 The lessors of the plaintiff set up title to the premises in dispute, as purchasers at a judicial sale. The Sheriff sold, by virtue of two writs of
 
 fieri facias,
 
 against
 
 *145
 
 the property of Samuel Fraley, the owner oí the premises, and to the validity and regularity of one of these writs, objection has been taken. It is unnecessary, therefore, to examine the objection made to the other.
 

 The lessors were both natives of the kingdom of France, and, at the time of their purchase, and at the date of the Sheriff’s conveyance to them, neither had been naturalized. Rut one of them, (John Rouche,) had, before the purchase, as a preparatory step for his naturalization, reported himself in a Court of Record in this State, as having arrived from France, at New York, more than two years previously thereto, and, declaring his intention to become'a citizen of the United States, then and there took an oath of allegiance to the State. And the other lessor, who, at the time of his arrival in the United States, was a minor, and therefore not under the necessity of taking that preparatory measure, was, before the trial of this suit, but after it was put to issue, regularly naturalized.
 

 The 40th section of the Constitution of this State declares, that “ every foreigner who comes to settle in this State, having first taken the. oath of allegiance to the State, may purchase, or by other just means acquire, hold, and transfer land or other real estate , and after one year’s residence, shall be deemed a free citizen.” The constitution of the United States having conferred on Congress the power “ to establish an uniform rule of naturalization,’’ and Congress having accordingly prescribed the mode by which aliens may be naturalized, the last part of this 40th section in the State Constitution is no longer in force ; but the, residue of the section comes not.into conflict with the constitution, or any law made under the constitution of the United States, and therefore is in full force. Consequently, all the disabilities of alienage, so far as they extend to the acquiring, holding,. and transferring of land and other real estate in North Carolina, were removed from John Rouche, by his taking the oath of allegiance. Upon this state of facts, one of the joint lessors of the plaintiff being qualified, at the time of the purchase made, to hold lands, the other then being wholly disqualified as an alien, and remaining such at the date of
 
 *146
 
 the demise laid in the declaration, and at the time when the issue was joined, but becoming naturalized before trial of the issue, several interesting questions are very naturally suggested. But we shall not enter upon the investigation of any of them, because we hold that the objection of alienage, supposing it to apply in all its force and to both the lessors, would not avail to destroy the plaintiff’s right to a recovery in this action.
 

 A loose notion has to some extent prevailed in the profession of this State, that an alien cannot maintain an ejectment, and' this notion- w'e suppose has arisen from a dictum to that effect reported in the case of
 
 Barges
 
 v Hogg, 1 Hay. 485. That was an action of trespass,
 
 guare clausumfregit,
 
 in which the defendant pleaded in abatement that the plaintiff was an alien born. Upon demurrer, the court held the plea bad, upon the plain ground that the possession of land by an alien is not necessarily illegal; that he can rightfully hold land, which hé has bought, until the State take it from him, and that while thus rightfully holding it, he is entitled to all legal remedies for an injury to his possession. But in pronouncing this judgment, according to the Reporter, the court took a distinction between the action of trespass on the one’ hand, and the action of ejectment or other actions for the recovery of a freehold on the other, and' observed of
 
 these
 
 that they could not be maintained by an alien. This
 
 dictum,
 
 so far as it applies to the action of ejectment, we believe to be incorrect.
 

 It is an elementary maxim, that' an alien has capacity to take, but no capacity to hold land. Care must be taken, however; not to be led into an error by this epigrammatical distinction. When it is said that an alien has not capacity to hold land, no more is meant than that he cannot hold it against the sovereign, should the sovereign choose to assert his claim thereto as iorfeited. But against all the rest of the world, the alien has full capacity to hol'd, and he can hold even against the sovereign, until the estate of the alien be divested by an office found, or some other equally solemn sovereign act.
 
 Page’s case, 5 Co. 22. Att’y Gen’l.
 
 v
 
 Du-
 
 
 *147
 

 nlessis.
 
 Parker, 152. Hobart, 231.
 
 Fairfax's devisee
 

 v
 
 Hunter, 7 Cranch, 603.
 
 University
 
 v Miller, 3 Dev. 188. It would therefore seem clear, that the alien being thus subject to the right of the sovereign to divest his estate for a forfeitnre, and, until he shall be thus divested by office found, the owner of the estate, he may convey, lease, and do every other act in relation thereto, which a rightful owner may do, and can maintain any aetion and have the benefit of any remedy, which the law gives to secure the enjoyment of property unto those whom the law recognizes as entitled to its enjoyment. But these inferences, however logically they may appear to follow from the principles clearly established, seem to come into conflict with certain positions expressly laid down in books of undoubted authority. Thus it is said,
 
 Co. Lit.
 
 426,
 
 Shep.
 
 Touchstone, 204, in the most general terms, that an alien cannot lease, or en-feoff, or make any other conveyance. But upon examination it will be seen, that the meaning of these positions is, that the grantees, feoffees or lessees of the alien take
 
 defeasi-ble
 
 estates only; that they are in no better plight than their grantor, feoffor or lessor, and therefore hold their estates subject to be divested by the sovereign on office found. Shep. Touchstone, 56, and 132. Preston on Convey. 257.
 
 Fair-fax's devisee
 
 v Hunter, 7 Cranch,
 
 ut supra.
 
 2 Kent’s Com’y. 61, and the authorities there cited. So also we find it stated in very general terms, that an alien cannot maintain a real or mixed action, But it is also stated, that if alien-age be pleaded to an alien in league, that is to say, an alien not an enemy, it cannot be pleaded “ to the writ or to the action, but in disability of the person as in case of villenage and outlawry” — but if it be pleaded to an alien enemy, “ it may be pleaded to the action.” Littleton, sect. 198. Co. Lit. 129. Brooke title, Denizen, 3, 10. Roscoe on Real Act’ns. 197. It has been thought by very learned Judges that it is difficult, at least, to reconcile the doctrine, that a plea of alien born is a good pica to the person of the demandant in a real action with the well established law, that, until office found, an alien purchaser is the rightful owner of the estate, aud because of a supposed incompatibility between this doc
 
 *148
 
 trine, and the acknowledged dominion of such alien in the land, the Supreme Court of New York have solemnly decided that this was a bad plea in abatement, when pleaded *n 51 j.
 
 Bradstreet
 
 v
 
 Supervisors of Oneida
 
 County, 13 Wendell, 546. It has occurred to us, that perhaps the doctrine may be thus accounted for and explained. In real and in mixed actions strictly so called, the demand-ant seeks to obtain, by means of the law, the seisin of a land or tenement., whereof he has never had seisin, or of the sei-sin whereof he has been unlawfully deprived. Now as the law will not aid aliens to get land, because by such means the realm may be impoverished,
 
 (The King
 
 v Holland, Allen, 14,) it'will withhold its aid to restore or to give him sei-sin, though, while he remains seized, it will protect him against wrong doers. It may also be, that, while the alien is seized, the law regards him as holding for the use of the sovereign, (1 Just, 186, a.) but the law deems him an improper person to take such seizin for the King, without the King’s license. But; be this as i.t may, it is manifest that if the plea of alien-born be a plea impeaching the personal a-bilit.y of the plaintiff to prosecute a real or mixed action, and therefore cannot be pleaded in bar to the action, or, even in abatement of the writ, the doctrine, that it is a good plea, when properly pleaded to the person of the demandant, is perfectly consistent with the settled principle, that until office found, an alien purchaser is rightfully seized of the land.
 

 Nothing can shew this more clearly than
 
 Page’s case,
 
 5 Co. Rep. 52. An office had there been found before certain commissioners, by force of a commission, under the seal of the Exchequer, but it was held that such office was insufficient and void, because to entitle the Queen to the land of an alien, there must be an “ office of entitling,” one “ that vests the estate and possession in the Queen, where she had but a right or title before,” and such an office must be by force of a commission, under the Great Seal. And in illustration of the principle, that the estate was in the alien and not in the crown, until office found, the following case was referred to by the court: “If an alien and a subject born, purchase lands to them and their heirs, they are joint tenants, and
 
 *149
 
 shall join in an assize, and survivor (i. e. survivorship,) shall shall take place, until office found.” An alien may therefore not only take a fee by purchase, but the estate remains in him with all the incidents belonging to it when taken, until and unless the sovereign, who has right thereto because of forfeiture, vests the forfeited estate in him by an office of entitling.
 

 Upon the trial of an ejectment under the common rule, and on the plea of not guilty, nothing is in dispute but the right of the plaintiff’s lessor to demise the land, whereof the defendant is in possession. The plaintiff is entitled to á verdict upon shewing, that, at the date of the confessed demise, his lessor had a legal title to the possession of the premises. And this legal title to the possession must belong to him, who is recognized by the law as having the estate in the premises.
 

 If, therefore, we should regard the action of ejectment as in all respects analogous to the, properly so called, real or mixed actions, for which it has been substituted in practice, we should be bound to hold that as a plea in bar to the action, or as matter of evidence on the general issue, the alien-age of the lessor of the plaintiff, who has shewn a good title as purchaser, will furnish no defence to the tenant. If the action be one, which, because of the personal disability of the lessor, his lessee ought not to be permitted
 
 to
 
 maintain, this matter of personal disability must be pleaded in abatement.
 

 Pleas in abatement are certainly very rare in actions of ejectment, but they may be pleaded whenever right so requires. D
 
 en Dem. Wroot
 
 v
 
 Fen,
 
 8 Term, 474.
 
 Williams dem. Johnson
 
 v
 
 Keene,
 
 1 Wm. Black, 197.
 
 Doe dem. Morton
 
 v
 
 Roe,
 
 10 East, 523.
 
 Doe dem. Rust
 
 v
 
 Roe,
 
 2 Bur. 1046.
 

 Butin our opinion, such a plea would not be good in an action of ejectment. Pleas, which take exception to the personal competency of the parties to sue or be sued, are not founded on any objection to the writ or declaration. Perhaps, therefore, they do not strictly fall within the definition
 
 *150
 
 of pleas iu abatement; but as they offer formal objections and do not deny the right of action, they are usually considered as of the nature of pleas in abatement, and pass under that denomination. As they are pleas of personal exemption from being sued, or of personal incompetency to bring the suit, they are necessarily restrained to the persons sued and suing. Upon principle they are pleas personal to the parties, plaintiff and defendant in the action, and no instance that we are aware of can be found, where a dilatory plea of this kind was allowed, except as applied to one or the other of the parties. Now dilatory pleas are not such favorites of courts of justice, as' to induce them to admit of such pleas, where the law does not distinctly recognize them. And the dilatory plea now spoken of has, if possible, less than the ordinary claims of pleas of that character, to an indulgent reception. The remedy by ejectment, as now used, is almost a creature of the courts. It has been framed, moulded and improved from time to. time, so as to present, in the least embarrassed and most direct shape,
 
 the question of title
 
 to the land in dispute. For this purpose — and so iar as substantial justice requires — it is indeed an action between the plaintiff’s lessor, and the person admitted to dispute his title. But, in order to disembarrass it from all technicalities, it is regarded in form as the action of the nominal plaintiff.
 

 If the plea of Alien-born be a good plea in abatement to a real action, it is cause of gratulation that there is a remedy, whereby one, who has in law a right of entry, may- regain his possession without being hindered by this plea.
 
 In this •respect
 
 we feel the force of the observations made by Chief Justice Savage in delivering the opinion of the court in the case before cited of
 
 Bradstreet v Supervisors of Oneida,
 
 13 Wend. 546. “If an alien may take and hold real estate against every person but the State, he may do so, because, by his purchase, he has an estate in the property which the laws guarantee to him. It is
 
 his
 
 against other individuals ; and if they
 
 attempt
 
 to turn him out, or disturb his possession, the law will protect and defend him.— But suppose that some person’succeeds in turning him out by force or fraud- — shall he then be debarred from all redress
 
 *151
 
 for this greater wrong, by a plea that he is an alien friend? Shall the successful intruder be suffered to enjoy with punity the fruits of his wrongful conduct?” Does the law give remedy as against a wrong doer, who has but imperfectly executed his injurious purpose, but withhold redress if he earry.it into full execution? Rut quitting these speculations in regard to the hardness of the doctrine — it cannot escape observation, that, if established, it would furnish strong inducements to disturb the repose of society. Men without right, or shadow of right, would be tempted to intrude into possessions quietly held by persons against whom existed the objection to alienage; and these in turn would be stimulated to regain, by every trick and artifice, the possessions so wrested from them ; while the law would stand by, smiling upon the victor in this contest of force and fraud, ready to award to him the profits of the land, as a reward for his superior cunning and prowess.
 

 In holding that the objection here set up cannot avail in an action of ejectment, either by way of a plea in abatement or as a defence to the action,-we have the satisfaction to find that our opinion has the sanction of several of the ablest courts in the other States of the Union. See Mc.
 
 Creery's Lessee
 
 v
 
 Alexander
 
 —and
 
 Same
 
 v Wilson, 5 Harrison &. McHenry 409, 412.
 
 Jackson
 
 v
 
 Lunn,
 
 3 New York Cir. 109.
 
 Sheaffe
 
 v
 
 O'Neale,
 
 1 Mass. Rep. 256.—
 
 Ainslee
 
 v
 
 Martin,
 
 9 Mass. 430.
 

 p£E Curiam. Judgment affirmed.